May it please the Court, Mark Davis for the Appellant and Block. I reserve four minutes for rebuttal, if I may. This appeal from summary judgment presents two core issues for de novo review. The first is probationary employees are not second-class citizens under the law. And the second is the requirement that evidence of pretext be analyzed cumulatively and as a whole. Now as to the first issue, it's clear that the law does not segregate probationary employees into a second class, if you will. The same legal standard under Title VII and the Rehabilitation Act applies to all employees, regardless of their probationary status. However, the Department of Labor is asking the Court to single out probationary employees and give them less rights and less protections. And that's specifically, they should have fewer rights under the law and no recourse to confront illegal behavior. That argument comes in pages 29 and 30 of their briefing, and specifically talking about temporal proximity. However, this position cannot stand because it doesn't comport with the law. Let's jump past that and assume it's covered by all the normal prohibitions on discrimination. The government came back here and said basically she was fired because of poor performance. And then there's a whole slew of emails that relate to her performance. So the real question is, what is the specific evidence that you think makes that a pretext? Well, I think there's a good deal of evidence that undermines the Department's position. As to the poor performance, that doesn't become an issue until Ms. Block complains about the discriminatory conduct. And until that happens, there are no allegations of poor performance. One comes after the other. So here, Ms. Block has the audacity to stand up to her supervisor and say, no, I won't tolerate this. And then as soon as that happens, there's a prolonged period of retaliation against her. They are basically doing their best to shut her up and make sure they do what they want. During that same time period, in fact, over a long period of time, there's a string of emails from her manager that in many senses applauds her work, applauds her performance, and tells her she- I read those and they basically say she was willing to do some extra work. They don't say she did great work. They're not really performance emails. So that's why those, in my view, wouldn't uptip the pretext. Well, certainly Ms. Block didn't have any other notice as to her performance. She never received a performance appraisal during her employment. So the only information, the only feedback she received, were these emails from her manager telling her that she was taking positive steps. I can refer to a specific email from Mr. Cotone. What evidence is that she was treated differently than other probationary employees? I mean, obviously, one of the things about probation is you give people, you know, before you get them through their probationary period, then you say, well, are we going to move on or not? So what? Well, and as to that, after she was relocated to her new workstation, and this was after she had filed her EEO complaints, she was given an increased workload both in terms of size and complexity. And there's a good deal of evidence in the record that they did not do that to other probationary employees because your first year is critical to learn the skills necessary to handle the caseload. I mean, this is a demanding job. And specifically, Ms. Paige Rebello testified that during your first year, you don't get a caseload based on three digits. Instead, it's a progressive policy where at first you get one, then you get two, and then after your first year, you may get three digits. And instead, what happened here is after Ms. Block files her complaints, she gets relocated and then reassigned the new caseload, which under their policy and practice, they don't do that to anyone. So certainly they put her in a position to fail. And that also contradicts what Ms. Long says, that she wanted to give her the benefit of the doubt and basically see if she could succeed. And that contradicts then giving her an increased workload, which she knows she's not capable to handle. There is also evidence that her superiors threatened her. Again, right in a tight sequence where she's filing her complaints, she's asking Ms. Hornback, who was the person who was discriminating against her, to not come down to her new workstation. And in response, Ms. Long says, well, soon you won't have to worry about Ms. Hornback. And the department is attacking that and saying, well, that's a speculative statement or a conclusory statement. But under the cases we've cited, and specifically Winarto and Bell, the jury gets to decide what that means. And the jury gets to hear Ms. Block's understanding of that statement as a direct threat on her employment. And again, that's because it's based in fact. A meeting which occurred between her and Ms. Long, and specific words that were said in response to continued complaints about Ms. Hornback. Coming back to the concept that this evidence has to be cumulatively, that's really why the district court erred in this case. If you look at the district court's decision, he isolates each piece of evidence and rejects it in turn. At no point does he take two or more of the pieces of evidence and then analyze them in an aggregate form to decide whether that is sufficient. Tell us what he should have done. What he should have done is what the courts did in Stegall or in Lyons, and analyze them together and say, for instance, Mr. Katata's emails, when viewed in light of Ms. Long's threats and the temporal proximity in this case, was specific and substantial evidence of pretext. And I would submit he did not conduct that analysis. If there are no further questions, I'd like to reserve. Okay. Thank you. Thank you. Good morning. May it please the Court, Counsel. My name is Jamie Midditt. I'm an Assistant United States Attorney representing the government. Your Honors, there are two claims before the Court, two claims of retaliation. Ms. Block claims that she was retaliated against when her employment with the Department of Labor was terminated prior to the end of her probationary period, and she claims she was retaliated against when she was relocated to a work unit on a different floor. Judge Robart found in a lengthy, well-reasoned decision that after looking at all of the evidence, Ms. Block had not met her burden of producing evidence specific and substantial enough to overcome the Department of Labor's legitimate business reasons for the actions at issue. Let me say here, Stegall actually doesn't say exactly what Counsel is saying. What Stegall says is the Court should not isolate the evidence that was presented to support a prima facie case and the evidence supported to present pretext. The Court has to consider it all, and if you read through Judge Robart's decision, you will see that Judge Robart actually did consider all of that evidence. So actually the issue before this Court is did Ms. Block present specific and substantial evidence enough to create a triable issue of material fact with respect to whether the Department of Labor intended to retaliate against her? In other words, did she establish that but for the fact that she engaged in protected activity, she would not have been terminated and she would not have been transferred to the fifth floor? Well, the Supreme Court has made that, you know, of all of the discriminatory claims, retaliation is really the hardest one to put to bed at summary judgment because the U.S. Supreme Court has hit the bar pretty low. That is correct. Well, retaliation is easier to show in adverse action, but you still have, once you have a prima facie case, the plaintiff still has to come forward, even when the issue is retaliation. They still have to come forward with specific and substantial evidence, evidence that would lead to an inference of discrimination. And they specifically have to show that before they're engaging in the protected activity, the act would not have happened. Could you just help me and just run through what happened after she filed her complaint? What are the events that occurred that you, the employer allegedly, did to her after she filed the complaint? Well, she's alleging before and after. I know. Right, right, exactly. After she filed her complaint, she was relocated to the fifth floor. She claims that she was relocated to the fifth floor because of, you know, that they were retaliating because she filed the EEO claim, which is a little disingenuous because actually she was relocated to the fifth floor because she filed that complaint. She was relocated in an effort to try to resolve the complaint. She complained about three people, right? She complained initially about her senior claims examiner at that time, Margo Hornback. She claimed that Margo Hornback was harassing her based on supposedly her disability that she couldn't hear. Now, the evidence is replete on the record that nobody had any idea that Ms. Block had a hearing disability. And when you look at the record, which I've actually set out in the brief, the actual complaints about Ms. Hornback are complaints that don't have anything to do with disability. They're complaints that she was criticizing her work. It's every time Ms. Hornback came to her and said, you've got a problem here with your work, Ms. Block would claim that she was being harassed. And in her deposition when we asked her, her statement basically was that Ms. Hornback spoke to her in a demeaning manner. Getting back to the ‑‑ She got moved. She got moved to the fifth floor. Right. And what? And after that, then she said that she got more ‑‑ that her ‑‑ she got harder cases assigned to her, basically is what she said. Or more codes, more digits. Pardon? She got more digits in the ‑‑ Yeah. She has indicated that. However, there is absolutely no evidence on the record, and she has presented no evidence to suggest that that is indeed the case. Paige Ribello. I know the comments. You know, now you don't have to worry about Margo Hornback anymore and your workload. That is the third thing. Basically, she has three arguments for pretext. One is that, as you discussed with counsel, that Mr. Cotato praised her on occasion. Her next argument is that she was getting harder cases, and that showed that they were setting her up to fail. And then her third argument is that Ms. Long made a statement to her when she complained about Ms. Hornback. She made a statement that, don't worry, soon you won't have to ‑‑ you won't have to ‑‑ I'm not sure exactly what it was, but it was, soon you won't have to worry about Ms. Hornback anymore, something along those lines. But, Your Honor, that, if I can go through those sort of one by one. Well, you've already gone through them all. Okay. That statement. Let me just stop. You know, we have these, and the points he makes, which I think you need to answer more specifically, are the temporal aspect of these vis‑a‑vis her complaint, and then also looking at them not sort of one by one by one, which he says is a mistake. You have to kind of look at the package. Would you just address those? Well, you do have to do both. I mean, obviously, before you look at the package, you have to look at each individual issue that's being raised to see if there's any substance to it or not, which is exactly what Judge Robart did. He walked through in great detail everything, the temporal proximity, which he said was sufficient to make a prima facie case. Then he walked through the fact that she claimed that she was being praised, so that showed that she was performing properly. He said that that showed, that didn't show that at all, because it wasn't a performance evaluation. It just showed that Mr. Quintada was a nice man and would encourage people when he could. Then he walked through the issue pertaining to whether she was getting a harder caseload, and he said there was absolutely, first of all, no evidence of that on the record, and notably Ms. Block didn't raise that in her EEO complaint, and she actually didn't raise it in her district court complaint. That came up for the first time in briefing. But assuming she was getting a harder caseload, there's no indication that that was because of retaliation. There's nothing to show that she was being treated differently than anybody else. The union representative testified that as they proceed through the year, they do get more difficult cases, and Ms. Block obviously is not going to be treated any differently than anybody else. She's held to the same standard as anybody else on their probationary period, and there's no evidence that anybody was treated differently. So Judge Robart went through all of that and said that that wasn't specific and substantial enough to show retaliation. What is the basis for the assertion that she got more difficult work? Was that in her deposition? No, it was in her briefing to the district court. There was nothing on the record. She did not raise that claim in her EEO complaint, and she actually didn't mention it in any factual statement in her district court complaint. And what about when appellant's counsel was talking, saying that she never heard that there was any problems with her work until she complained? What does the record show on that? Well, the record shows, if you look at each of the declarations from her two supervisors and her three senior claims examiners, the record shows that that's actually not accurate. Prior to her filing the EEO complaint, two of her senior claims examiners, Ms. Hornback, the one who was her senior claims examiner for the most part at that time, and Ms. Karen Waller, who filled in at times and who subsequently became her senior claims examiner because Ms. Block had asked to be assigned to her, both of those individuals contacted Mr. Katata and said that there are problems with Ms. Block's work. We think that she could benefit from some additional training. And Mr. Katata went to Ms. Block and told her that, offered her additional training, which she refused to go to. Right prior to her filing her EEO complaint, the thing that actually precipitated her filing the EEO complaint was Ms. Hornback giving her an email laying out instances on a particular case that she'd been working on saying there are problems with this. And that's what made Ms. Block say, stop harassing me and then she filed a complaint saying she was being harassed. So there is evidence prior to her filing her EEO complaint that her work was not up to par. And then returning to the final thing, Your Honors, the statement that Ms. Long made. Judge Robert looked at that at length and went through that statement and finally came to the conclusion that the statement, basically, I say the statement is an innocuous statement. He said the statement is an anodyne statement. But basically the cases say that for a statement to be considered specific and substantial evidence of discrimination, the statement has to lead to an inference of discrimination. And that statement in and of itself does not. If anything, that statement is more of a threat to Margo Hornback. It's not saying anything about Ms. Block. And even if Your Honors were to say that somehow that statement means that they were going to let her go, it doesn't show in any way that they were going to let her go because she engaged in prior protected activity. Clearly they did let her go because her performance was not adequate. And the record is replete with evidence showing that that is indeed the case. And there's nothing specific and substantial enough on this record to overcome that to show that that's not true. They didn't believe that she was performing at an unacceptable level, that really they were just saying that because they were trying to retaliate against her. It's just not there. Okay, thank you. Thank you, Your Honor. I'd like to pick up right where we just left off and mention that when the district court looked at this threat from Ms. Long, he went both ways. And I want to say that that discussion and that analysis shows that there's reasonable interpretations as to what that statement means. And ultimately that's a question for a jury. And that inference is strengthened by the fact that this threat comes right after Ms. Block's formal complaint. She sends an email to Ms. Long and complains about Ms. Hornback coming down to her new workstation, harassing her there. And then she also says, by the way, I just filed my formal EEO complaint. They then have a meeting where Ms. Long then directly threatens Ms. Block. So on that record, there are competing inferences as to what that threat means. And a jury should have an opportunity to credit Ms. Block or, in the alternative, they could credit the department's interpretation and then make a factual finding. But in this case, it's not appropriate for Judge Robart to make that decision on his own. And, again, it's a consistent argument by the department that they have more evidence. Their evidence is overwhelming. But, again, when there's competing inferences from the evidence as to whether there's discrimination, whether there's retaliation, that's for the jury to decide. And the district court doesn't get to step in and decide that this threat is just an anodyne statement or that Mr. Katata's emails are just employer employee banter. Again, that's for a jury to decide. Specifically, to address the point about the increased workload, that is in the record. Ms. Block's declaration discusses that at length. That's in the record at 139 to 140, talking about her experience. And, again, based on facts and what she saw in the increased workload. So I would direct you to that record. I would also mention that the relocation is critical here because it's not, again, it's the department's position that they did this to get her away from the other people. But there's more to it. They put her in a workspace where she couldn't hear. She couldn't do her job. And they knew this. They knew that she was doomed to fail by putting her in an environment without sufficient acoustical barriers to hear. And, again, this was contrary to her protest saying, I can't do this. So with that, I'd like to conclude if there's no further questions. The district court did issue a detailed and thorough decision. But this court gives no deference to that decision because the review is de novo. Reversal is appropriate in this instance because the district court made several key mistakes. It misapplied the legal standard and improperly weighed the evidence by making credibility determinations and inferences in favor of the moving party. Therefore, remand for a jury trial is required. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, McKeown, Callahan